# IN THE UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# CLEVELAND DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 18-17316-aih |
| AMIE L. ARTINO | CHAPTER 7 |
| Debtor | JUDGE ARTHUR I HARRIS |

**MOTION OF AMERICREDIT FINANCIAL SERVICES, INC. DBA GM FINANCIAL FOR RELIEF FROM STAY AND ABANDONMENT**

**2017 CHEVROLET TRAVERSE VIN: 1GNKVGKD4HJ265097**

Americredit Financial Services, Inc. dba GM Financial ("Movant") moves this Court under Bankruptcy Code §§ 361, 362, 363, and other sections of Title 11 of the United States Code, under Federal Rules of Bankruptcy Procedure 4001 and 6007, and under Local Bankruptcy Rule 4001-1 for an order conditioning, modifying or dissolving the automatic stay imposed by Bankruptcy Code §362 and for abandonment of property under Bankruptcy Code §554.

## MEMORANDUM IN SUPPORT

1. This Court has jurisdiction over this matter under 28 U.S.C. §§157 and 1334. This is a core proceeding under §§ 1408 and 1409.

2. On March 20, 2017, Amie L. Artino ("Debtor") obtained a loan from Marhofer Chevrolet, Inc. in the amount of $35,659.09. Such loan was evidenced by a Retail Installment Contract dated March 20, 2017 (the "Note"), a copy of which is attached as Exhibit A.

3. To secure payment of the Note and performance of the terms contained in it, the Debtors executed a Security Agreement in favor of Marhofer Chevrolet, Inc. dated March 20, 2017 (the "Security Agreement"). The Security Agreement granted a lien on the Personal Property known as 2017 CHEVROLET TRAVERSE VIN: 1GNKVGKD4HJ265097 owned by the Debtor (the "Collateral"). The Collateral is more fully described in the Security Agreement (check one)

☐ attached as Exhibit B

OR

☒ contained in the Note, attached as Exhibit A.

4. The lien created by the Security Agreement was perfected by (check all that apply):

☒ Notation of the lien on the Replacement Certificate of Title. A copy of Replacement Certificate of Title is attached as Exhibit B.

☐ Other (state with particularity):

☐ Security Agreement.

Based on the Voluntary Petition and Schedules, the lien is the 1st lien on the Collateral.

5. The entity in possession of the original Note as of the date of this motion is Americredit Financial Services, Inc. dba GM Financial.

6. The entity servicing the loan is Americredit Financial Services, Inc. dba GM Financial.

7. The Note was transferred as evidenced by the following:

a. If the Collateral is real estate:

   i. Under Uniform Commercial Code § 3-203(a) as applicable under state law in effect where the property is located, from the original lender:

   ☒ N/A.

   OR
   By endorsement on the Note,
   Payable to: _____.

   OR

   By blank endorsement on the Note.

   OR

   By allonge attached to the Note.

   OR

   By blank allonge, attached to the Note.

   OR

   The Note is not endorsed to the Movant, or is not endorsed in blank with an allegation that the Movant is in possession of the original Note. The factual and legal basis upon which the Movant is entitled to bring this motion is (explain with particularity and attached supporting documentation):

   OR

   By endorsement on the Note or by allonge attached to the Note, through a power of attorney. If this box is checked, a copy of the power of attorney is attached as Exhibit <__>. Explain why it provides Movant the authority to endorse the Note:

   ii. Under Uniform Commercial Code § 3-203(a) as applicable under state law in effect where the property is located, from the <FIRST TRANSFEREE> to <_____> [ADD ADDITIONAL TRANSFER SECTIONS AS

APPROPRIATE. THE LAST TRANSFEREE MUST BE THE MOVANT].>

  iii. A court has already determined that Movant has the ability to enforce the Note with a judgment dated <INSERT DATE OF JUDGMENT> in the <INSERT NAME OF COURT>. A copy of the judgment is attached as Exhibit <_>.>

  iv. Other _____ [Explain].

 b. If the Collateral is not real estate (check one):

  N/A.

  OR

  ☒ From the original lender to Americredit Financial Services, Inc. dba GM Financial on the face of the Retail Installment Sale Contract

8. The Security Agreement was transferred as follows (check one):

  N/A.

  OR

  ☒ From the original lender to Americredit Financial Services, Inc. dba GM Financial on the face of the Retail Installment Sale Contract

9. The value of the Collateral is $26,025.00. This valuation is based on the NADA Official Used Car Guide ('Exhibit C').

10. As of the date of this Motion, there is due and owing on the Note the outstanding balance of $26,614.29, plus late fees and interest accruing thereon at the rate of 0.00% per annum as described in more detail on the worksheet. The total provided in this paragraph cannot be relied upon as a payoff quotation.

11. The amount due and owing on the Note as set forth in paragraph ten DOES NOT include a credit for the sum held in suspense account by the Movant. The amount of the credit is $0.

12. Other parties known to have an interest in the Collateral besides the Debtors, the Movant, and the trustee are (check all that apply):

⊠ N/A.

The <COUNTY> County Treasurer, for real estate taxes, in the amount of $<AMOUNT>.

<ANY OTHER PARTY HOLDING A LIEN, IF APPLICABLE IN THE AMOUNT OF $___ [ADD ADDITIONAL PARTIES AS APPROPRIATE]>.

13. The Movant is entitled to relief from the automatic stay under Bankruptcy Code §362(d) for this/these reason(s) (check all that apply):

Debtors have failed to provide adequate protection for the lien held by the Movant for these reasons: <EXPLAIN>

Debtors have failed to keep the Collateral insured as required by the Security Agreement.

Debtors have failed to keep current the real estate taxes owed on the Collateral.

⊠ Debtor has failed to make periodic payments to Movant for the months of September 4, 2018 through January 4, 2019, which unpaid payments are in the aggregate amount of $2,971.55. The total provided in this paragraph cannot be relied upon as a reinstatement quotation.

⊠ Debtors have no equity in the Collateral, because the Collateral is valued at $26,025.00, and including the Movant's lien, there are liens in excess of $26,614.29 on the Collateral.

14. Movant has completed the worksheet attached as Exhibit D.

15. Movant is entitled to an order directing the trustee to abandon the Collateral under 11 U.S.C. §554(b) for these reasons (check all that apply):

- ☒ The Collateral is burdensome to the estate because the property is valued less than the total amount of the liens against it.

- ☒ The Collateral is of inconsequential value and benefit to the estate because upon liquidation of the Collateral no proceeds will remain for the benefit of the estate.

WHEREFORE, Movant prays for an order from the Court:

(a) Granting Movant relief from the automatic stay of Bankruptcy Code §362 to permit Movant to proceed under applicable non-bankruptcy law; AND

(b) AUTHORIZING AND DIRECTING THE CHAPTER 7 TRUSTEE TO ABANDON THE COLLATERAL UNDER BANKRUPTCY CODE §554.

Respectfully Submitted,

/s/ Jon J. Lieberman
Jon Lieberman (0058394)
Attorney for Movant
Sottile & Barile, Attorneys at Law
P.O. Box 476
Loveland, OH 45140
Phone: (513) 444-4100
Email: bankruptcy@sottileandbarile.com

**CERTIFICATE OF SERVICE**

I certify that on January 16, 2019, a true and correct copy of Americredit Financial Services, Inc. dba GM Financial's MOTION FOR RELIEF FROM STAY and ABANDONMENT was served:

Via the Court's ECF System on these entities and individuals who are listed on the Court's Electronic Mail Notice List:

James M. Doran, Debtor's Attorney
jdoran@amourgis.com

Sheldon Stein, Chapter 7 Trustee
ssteindocs@gmail.com

United States Trustee
(registeredaddress)@usdoj.gov

And by regular US Mail, postage pre-paid on:

Amie L. Artino
4440 West 56th Street
Cleveland, OH 44144

    /s/ Jon J. Lieberman
    Jon Lieberman (0058394)
    Attorney for Movant

LAW 553-OH-eps-14 8/15

RETAIL INSTALLMENT SALE CONTRACT  
SIMPLE FINANCE CHARGE

EXHIBIT A

Dealer Number _____ Contract Number _____

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| AMIE ARTINO<br>4254 DAWNCLIFF DR<br>CLEVELAND, OH 44144<br>CUYAHOGA | N/A | MARHOFER CHEVROLET, INC.<br>3423 DARROW RD<br>STOW, OH 44224 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Vehicle Identification Number | Mileage | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2017 | CHEVROLET TRAVERSE | 1GNKVGKD4HJ265097 | ☐ estimate<br>☒ actual<br>21 | ☒ Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural  ☐ _____ |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $8750.00 |
|---|---|---|---|---|
| 0.00 % | $ 0.00 | $ 35659.09 | $ 35659.09 | $ 44409.09 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 59 | 594.32 | Monthly beginning 05/04/2017 |
| 1 | 594.21 | DUE DATE: 04/04/2022 |

Or As Follows: N/A

**Late Charge.** If payment is not received in full within __10__ days after it is due, you will pay a late charge of $ __20__ or __5__ % of each installment, whichever is __greater__.  
**Prepayment.** If you pay off all your debt early, you will not have to pay a penalty.  
**Security Interest.** You are giving a security interest in the vehicle being purchased.  
**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

**APPLICABLE LAW**  
Federal law and the law of the state of our address shown above apply to this contract.

**WARRANTIES SELLER DISCLAIMS**  
Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.  
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.  
**Spanish Translation:** Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.



ORIGINAL

Buyer Initials _____ Co-Buyer Initials __N/A__

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Price of vehicle, accessories, and taxes .............................................. $ 39250.52 (1)
2. Other charges including amounts paid to others on your behalf
   (Seller may keep part of these amounts):
   - A. Government taxes not included in line 1 above ........................ $ N/A
   - B. Government license and/or registration fees
     TAG/TRANSFER FILING FEE ............................................ $ 23.50
   - C. Government certificate of title fees ............................................ $ 10.00
   - D. Net trade-in payoff to ___N/A___ .................................................. $ 0.00
   - E. Optional Gap Contract ................................................................ $ 650.00
   - F. Documentary Fee ..................................................................... $ 250.00
   - G. Other Charges (Seller must identify who is paid and describe purpose.)

   | to | for | $ |
   |---|---|---|
   | N/A | N/A | N/A |
   | MARHOFER CHEVROLET, INC. | SERVICE CONTRACT | 2718.00 |
   | N/A | N/A | N/A |
   | N/A | N/A | N/A |
   | ALLSTATE | ALLSTATE COMPLETE | 811.00 |
   | N/A | N/A | N/A |
   | N/A | N/A | N/A |
   | N/A | N/A | N/A |
   | N/A | N/A | N/A |

   Total other charges and amounts paid to others on your behalf ............ $ 4462.50 (2)
3. Total cash price (1 + 2) ................................................................................ $ 43713.02 (3)
4. Downpayment
   Trade-in ___N/A___
        (Year)    (Make)    (Model)
   Gross trade-in $ ___N/A___ -payoff by seller ............................................ $ N/A
   = net trade-in $ ___N/A___ +cash ........................................................... $ 5000.00
   +other (describe) REBATE(S) ................................................................ $ 3750.00
   Total downpayment = (if negative enter "0" and see line 2D above) ... $ 8750.00 (4)
5. Unpaid balance of cash price (3 minus 4) ................................................. $ 34963.02 (5)
6. Insurance
   - A. Cost of optional credit insurance paid to insurance company or companies
     Life .................................................. $ 696.07
     Disability ____N/A____ ........................ $ N/A       $ 696.07
   - B. Other optional insurance paid to Insurance Company or Companies ........ $ N/A
   Total insurance charges .................................................................... $ 696.07 (6)
7. Amount financed (principal balance) (5 + 6) .............................................. $ 35659.09 (7)
8. Finance charge .......................................................................................... $ 0.00 (8)
9. Total of payments (time balance) (7 + 8) .................................................. $ 35659.20 (9)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before _____, Year _____. SELLER'S INITIALS _____

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 2E of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term __60__ Mos.   EPJ   Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X _Annie Y. Artino_

### Limited Right to Cancel
☒ If checked, a limited right to cancel applies:
You agree that we have __15__ days from the date you sign this contract to assign this contract. If we are unable to assign this contract within this time period, you or we may cancel this contract. This limited right to cancel will end at the earlier of the date we assign the contract or the end of the stated time period. **Please see below for important terms of this limited right to cancel.**

_ALA_ / N/A
Buyer Initials / Co-Buyer Initials

---

**Insurance.** You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:
**Optional Credit Insurance**
☒ Credit Life: ☒ Buyer ☐ Co-Buyer ☐ Both
☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both
Premium:
Credit Life $ __696.07__
Credit Disability $ __N/A__
Insurance Company Name _____
Home Office Address _____

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 6A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

### Other Optional Insurance
| ☐ | N/A | N/A |
|---|---|---|
|   | Type of Insurance | Term |
Premium $ __N/A__
Insurance Company Name __N/A__
Home Office Address __N/A__

| ☐ | N/A | N/A |
|---|---|---|
|   | Type of Insurance | Term |
Premium $ __N/A__
Insurance Company Name __N/A__
Home Office Address __N/A__

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.

I want the insurance checked above.

X _ALA_                          03/20/2017
Buyer Signature                  Date
X _____
Co-Buyer Signature               Date

**THIS INSURANCE DOES NOT INCLUDE INSURANCE ON YOUR LIABILITY FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS. WITHOUT SUCH INSURANCE YOU MAY NOT OPERATE THIS VEHICLE ON PUBLIC HIGHWAYS.**

Amount of Security Interest Recording Fee Paid in Cash
$ __N/A__

Returned Check Charge: You agree to pay a charge not to exceed $20 if any check you give us is dishonored.

### Limited Right to Cancel
a. We agree to deliver the vehicle to you on the date this contract is signed by us and you. You understand that it may take a few days for us to verify your credit and assign this contract. You agree that we have the number of days stated above to assign this contract. If we are unable to assign this contract within this period of time to any one of the financial institutions with whom we regularly do business, you or we may cancel this contract. This limited right to cancel will end at the earlier of the date we assign the contract or the end of the stated time period.

b. We will notify you if we cannot assign this contract and if we elect to cancel this contract. Upon receipt of such notice, you must comply with "Buyer's Obligations" described below and we must give back to you all consideration we have received in accordance with the terms of the Buyers Order.

c. Buyer's Obligations: If we do not assign the contract within the time described above, and you or we cancel this contract as provided above, you must return the vehicle to us immediately in the same condition as when sold, reasonable wear and tear excepted. You agree to pay us the cost of repairing any damage occurring to the vehicle while it is in your possession and to hold us harmless from any expenses, costs and fees arising out of any act pertaining to the operation of the vehicle while it is in your possession. If the vehicle is immobilized or impounded while in your possession, you agree to do whatever is necessary to ensure the vehicle's return to us. If you do not return the vehicle immediately, you will be liable for all expenses incurred by us in taking the vehicle from you. If you fail to return the vehicle, we may use any legal means to take it back.

d. While the vehicle is in your possession, all terms of this contract, including those relating to use of the vehicle and insurance for the vehicle, are in full force and you assume all risk of loss or damage to the vehicle.

e. Nothing in this section gives you the right to cancel this contract for reasons unrelated to our assignment of this contract.

Buyer Initials _ALA_   Co-Buyer Initials _N/A_   44086*1*RMC-FI        03/20/2017 02:33 pm
                                                                        LAW 553-OH-eps-14 8/15 v1  Page 2 of 4

OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract, on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.
   e. **Your right to refinance an irregular payment schedule.** An irregular payment schedule is one with payments not scheduled to be paid in substantially equal consecutive payments. If you have an irregular payment schedule and if you are buying the vehicle primarily for personal, family, or household use, you may refinance this contract without penalty. The terms of the refinancing will be no less favorable to you than the terms of this contract. This provision does not apply if we adjusted your payment schedule to your seasonal or irregular income.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
      You give us a security interest in:
      • The vehicle and all parts or goods put on it;
      • All money or goods received (proceeds) for the vehicle;
      • All insurance, maintenance, service or other contracts we finance for you; and
      • All proceeds from insurance, maintenance, service or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
      This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.
   d. **Insurance you must have on the vehicle.**
      You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as an additional insured and as loss payee. If you do not have this insurance, we may exercise our rights under this contract; or, if we choose, buy physical damage insurance covering our interest in the vehicle. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we get a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments. If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once (accelerate). Default means:
      1. You do not pay any payment on time;
      2. You give false, incomplete, or misleading information on a credit application;
      3. You start a proceeding in bankruptcy or one is started against you or your property; or
      4. You break any agreements in this contract.
      If your only default is that you did not pay a payment on time, we may accelerate this contract only if your default continues for at least 30 days. Otherwise, we may accelerate any time after you default. Our right to accelerate is subject to any right the law gives you to reinstate this contract.
      The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.
   d. **How you can get the vehicle back if we take it.** If we repossess the vehicle, in many situations, the law gives you the right to pay to get it back. We will tell you what you have to do to get the vehicle back.
   e. **We will sell the vehicle if you do not get it back.** If you do not do what is required to get the vehicle back, we will sell the vehicle.
      We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.
   f. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **SERVICING AND COLLECTION CONTACTS**
   You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

| NO COOLING OFF PERIOD |
|---|
| State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees, if this contract is subject to the limited right to cancel described on page 2, or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales. |

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X _Amie L. Alton_ Co-Buyer Signs X __N/A__
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.
See the rest of this contract for other important agreements.

**NOTICE TO RETAIL BUYER: Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights.**

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X _Amie L. Alton_ Date _03/20/2017_ Co-Buyer Signs X ___N/A___ Date _N/A_

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____  Address _____
Seller signs _MARHOFER CHEVROLET, INC._ Date _03/20/2017_ By X _____ Title _F&I MANAGER_

| Seller assigns its interest in this contract to **GM FINANCIAL** | (Assignee) under the terms of Seller's agreement(s) with Assignee. |
|---|---|
| Assigned without or with limited recourse  MARHOFER CHEVROLET, INC. | Assigned with recourse |
| Seller  By  Title | Seller  By  Title |

LAW FORM NO. 553-OH-eps-14 (REV. 8/15) U.S. PATENT NO. D460,782
©2015 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR
FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.    44086*1*RMC-FI    03/20/2017  02:33 pm
LAW 553-OH-eps-14 8/15 v1   Page 4 of 4

ORIGINAL

# GM FINANCIAL

4001 Embarcadero Drive  
Arlington, Texas 76014

GMF Application #: ▮▮▮▮▮▮  
Please fax completed form to (877) 912-9660

## ASSIGNMENT

This ASSIGNMENT is attached to and expressly made a part of that certain Retail Installment Contract pertaining to the sale and financing of a motor vehicle (the "Contract") more particularly described as follows:

| Date of Contract | Seller | Buyer(s) |
|---|---|---|
|  | Ron Marhofer Chevrolet | Artino, Amie |

FOR VALUE RECEIVED, the Seller identified above ("Seller") hereby sells, assigns and transfers to AmeriCredit Financial Services, Inc. d/b/a GM Financial*, its successors and assigns ("GM Financial"), Seller's entire right, title and interest in and to the Contract and authorizes GM Financial to do every act and thing necessary to collect and discharge obligations arising out of or incident to the Contract. The Assignment of the Contract shall be WITHOUT RECOURSE to the Seller unless noted below. Seller acknowledges that, notwithstanding anything to the contrary contained in said Contract, including references in the Contract to assignees other than GM Financial, if any, this Assignment shall be effective to transfer Seller's rights in the Contract to GM Financial.

_____  
**Dealer-Seller**

_____      _____  
**By**                                                                 **Date**

- **Assignment of the Contract shall be WITHOUT RECOURSE unless noted below.**

**Dealer-Seller and GM Financial must initial.** _____

* Assignment is to the following entities in the following states:

| | | |
|---|---|---|
| **GM Financial of Arizona** | - | **Arizona** |
| **GM Financial of Wisconsin** | - | **Wisconsin** |

Revision Date: 10/02/13                                Form 405 – Assignment to Retail Installment Contract

# OHIO CERTIFICATE OF TITLE

**STATE OF OHIO**    No. 18 1244 0338

ISSUING CNTY: CUYAHOGA
RESIDENT CNTY: CUYAHOGA

REPLACEMENT    EXHIBIT B

ISSUE DATE: 12/14/2018

| | | |
|---|---|---|
| IDENTIFICATION NUMBER: 1GNKVGKD4HJ265097 | YEAR: 2017 | MAKE: CHEV |
| | MAKE DESCRIPTION: CHEVROLET | |
| COMMENTS | PURCHASE PRICE: $40,444.00 | BODY TYPE: SW |
| | MODEL DESCRIPTION: TRAVERSE | |
| CONVERSION | TAX: $3,235.52 | MILEAGE: 21 |
| | MLG BRAND: ACTUAL | EVIDENCE: OH-7707197282 |

BRAND(S)

OWNER
AMIE ARTINO
4254 DAWNCLIFF DR
CLEVELAND, OH 44144

PREVIOUS OWNER
MARHOFER CHEVROLET INC
3423 DARROW RD
STOW, OH 44224

77116564    ND000702

FIRST LIENHOLDER    DATE OF LIEN: 04/07/2017
GM FINANCIAL
P.O BOX 1510
COCKEYSVILLE, MD 21030

LIEN DISCHARGE
Lienholder _____
by: _____ Authorized signature / date
CLERK LIEN CANCELLATION
by: _____ Deputy Clerk / date

LIEN DISCHARGE
Lienholder _____
by: _____ Authorized signature / date
CLERK LIEN CANCELLATION
by: _____ Deputy Clerk / date

WITNESS MY HAND AND OFFICIAL SEAL THIS 14TH DAY OF DECEMBER, 2018
(SEAL)

%145417362

* %145417362 *

%145417362

DENNIS G KENNEDY
FISCAL OFFICER

99A
MEO

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS.**

BMV 3800 4/16 [760-1503]

ERASURES AND ALTERATIONS VOID THIS TITLE ASSIGNMENT. (Type or Print in Ink.)

**ASSIGNMENT OF OWNERSHIP**  This vehicle was a (if applicable): ☐ Former Law Enforcement Vehicle ☐ Flood Vehicle ☐ Former Taxi

I (we) certify the vehicle/watercraft/outboard motor described in this title was delivered on ____/____/_____ for the price of $_____ to:

Buyer Printed Name _____

Buyer Printed Address _____

**ODOMETER CERTIFICATION**  Federal and State laws require that you state the mileage in connection with transfer of ownership.

Failure to complete or providing false information may result in fines and/or imprisonment.
I (we) certify to the best of my (our) knowledge that the odometer now reads ☐☐☐☐☐☐ miles (no tenths)
Check one: ☐ Actual Mileage
☐ The Mileage stated is in EXCESS of the Mechanical Limits    Seller is a minor ☐ Yes ☐ No
☐ The odometer reading is not the actual Mileage. WARNING Odometer Discrepancy    If Yes, Minor Consent Form (BMV 3751) Required
I (we) warrant the title to be free of all liens.

X _____
Seller's Printed Name                              Seller's Signature

Seller's Printed Street Address _____

City _____ State _____ Zip _____

Notary: Subscribed and sworn to before me by _____

On the _____ day of _____, 20 _____ in the county of _____ state of _____

(Notary Seal)

My commission expires _____ printed name _____ Signature of (circle one)

Clerk, Deputy Clerk of Courts, Notary X _____

**Warning to buyer and seller.** You are required by law to state the true selling price. A false statement is in violation of section 2921.13 of the Ohio Revised Code and is punishable by six months imprisonment or a fine of up to one thousand dollars or both. All transfers are audited by the Department of Taxation. The seller and buyer must provide any information requested by the Department of Taxation. The buyer may be assessed any additional tax found to be due.

**BUYER ACKNOWLEDGEMENT OF ABOVE ODOMETER CERTIFICATION**

X _____
Buyer Printed Name                              Buyer Signature

**APPLICATION FOR CERTIFICATE OF TITLE (Type or Print in Ink)**  Salvage Vehicle cannot be driven until a rebuilt title is issued.

Check type of Application(s): ☐ Motor Vehicle ☐ Memorandum ☐ Watercraft ☐ Outboard Motor ☐ Salvage

Applicant Printed Name _____ SSN/EIN _____

Applicant Printed Address _____
                              Street                City              Zip              County

Purchase Price $_____ Gross Tax Due $_____ Vendor's Discount $_____ Tax Paid $_____

Trade in Allowance $_____ If Tax Exempt, State Reason _____ Dealer # _____ Vendor # _____

Lienholder _____ ELien # _____

Lienholder Address _____

Condition of Vehicle/Watercraft/Outboard Motor (check only one): ☐ Good ☐ Fair ☐ Poor ☐ Wrecked    Title to be ☐ Printed ☐ Non-Printed

Optional: ☐ With Rights of Survivorship (2 owners only) ☐ Transfer On Death (1 owner only) BMV 3811 Form required

Applicant is a minor ☐ Yes ☐ No  If yes, provide Date of Birth ____/____/_____ and Minor Consent Form (BMV 3751)

I (we) state that all information contained in this application is true and correct.

X _____
Applicant Signature

Notary: Subscribed and sworn to before me by _____

On the _____ day of _____, 20 _____ in the county of _____ state of _____

(Notary Seal)

My commission expires _____ printed name _____ Signature of (circle one)

Clerk, Deputy Clerk of Courts, Notary X _____

LATE FEE OF $5.00 FOR FAILURE TO APPLY WITHIN 30 DAYS OF ASSIGNMENT.



**NADA Used Cars/Trucks**

GM Financial - BK Dept     EXHIBIT C

4000 Embarcadero
Arlington, TX 76014
817-524-3546
Mandy.Youngblood@gmfinancial.com

## Vehicle Information

| | |
|---|---|
| **Vehicle:** | 2017 Chevrolet Traverse Utility 4D LT AWD 3.6L V6 |
| **Region:** | Central |
| **Period:** | December 27, 2018 |
| **VIN:** | 1GNKVGKD4HJ265097 |
| **Mileage:** | 22,000 |
| **Base MSRP:** | $36,100 |
| **Typically Equipped MSRP:** | $36,995 |
| **Weight:** | 4,956 |



## NADA Used Cars/Trucks Values

| Auction* | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Low | $19,825 | $1,196 | N/A | **$21,021** |
| Average | $21,325 | $1,196 | N/A | **$22,521** |
| High | $22,850 | $1,196 | N/A | **$24,046** |
| **Trade-In** | | | | |
| Rough | $20,850 | $775 | N/A | **$21,625** |
| Average | $22,275 | $775 | N/A | **$23,050** |
| Clean | $23,425 | $775 | N/A | **$24,200** |
| | | | | |
| Clean Loan | $21,100 | $775 | N/A | **$21,875** |
| Clean Retail | $25,250 | $775 | N/A | **$26,025** |

*The auction values displayed include typical eqiupment and adjustments for mileage and any of the following applicable accessories: engine size, drivetrain, and trim.

## Selected Options

| | Trade-In/Loan | Retail |
|---|---|---|
| Aluminum/Alloy Wheels | w/body | w/body |
| Power Seat | w/body | w/body |

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND DIVISION

IN RE:                                  CASE NO. 18-17316-aih

AMIE L. ARTINO                  CHAPTER 7

         Debtor                        JUDGE ARTHUR I HARRIS

**<u>MOTION OF AMERICREDIT FINANCIAL SERVICES, INC. DBA GM FINANCIAL FOR RELIEF AND ABANDONMENT FROM STAY WORKSHEET, EXHIBIT D</u>**

I.    LOAN DATA

     A.    IDENTIFICATION OF COLLATERAL (check all that apply):

           ☐    Real Estate:
                   ☐    Principal Residence of Debtor(s)
                   ☐    Other

           ☒    Personal Property: 2017 CHEVROLET TRAVERSE VIN: 1GNKVGKD4HJ265097

           ☐    Debtor's Chapter 13 Plan provides for surrender of the Collateral

           ☐    Other Property: _____

     B.    CURRENT VALUE OF COLLATERAL: $26,025.00

     C.    SOURCE OF COLLATERAL VALUATION: NADA Official Used Car Guide

     D.    ORIGINAL LENDER: Marhofer Chevrolet, Inc.

     E.    ENTITY ENTITLED TO ENFORCE THE NOTE: Americredit Financial Services, Inc. dba GM Financial

     F.    CURRENT LOAN SERVICER: Americredit Financial Services, Inc. dba GM Financial

     G.    DATE OF LOAN: March 20, 2017

     H.    ORIGINAL PRINCIPAL AMOUNT DUE UNDER NOTE: $35,659.09

I. ORIGINAL INTEREST RATE ON NOTE: 0.00%

J. CURRENT INTEREST RATE: 0.00%

K. ORIGINAL MONTHLY PAYMENT AMOUNT: $594.32

L. CURRENT MONTHLY PAYMENT AMOUNT: $594.32

M. THE CURRENT MONTHLY PAYMENT AMOUNT LISTED ABOVE:

☐ Includes an escrow amount of $_____ for real estate taxes.
☐ Includes an escrow amount of $_____ for property insurance.
☐ Includes an escrow amount of $_____ for _____.
☒ Does not include any escrow amount.

N. DATE LAST PAYMENT RECEIVED: 10/04/2017

O. AMOUNT OF LAST PAYMENT RECEIVED: $594.31

P. AMOUNT HELD IN SUSPENSE ACCOUNT: $0

Q. NUMBER OF PAYMENTS PAST DUE: 5

II. AMOUNT ALLEGED TO BE DUE AS OF THE DATE THE MOTION IS FILED:

|   | Description of Charge | Total Amount of Charges | Number of Charges Incurred | Dates Charges Incurred |
|---|---|---|---|---|
| A. | PRINCIPAL | $26,614.29 | | |
| B. | INTEREST | $0.00 | | |
| C. | TAXES | $0.00 | | |
| D. | INSURANCE | $0.00 | | |
| E. | LATE FEES | $0.00 | | |
| F. | NON-SUFFICENT FUNDS FEES | $0.00 | | |
| G. | PAY-BY-PHONE FEES | $0.00 | | |
| H. | BROKER PRICE OPINIONS | $0.00 | | |
| I. | FORCE-PLACED INSURANCE | $0.00 | | |
| J. | PROPERTY INSPECTIONS | $0.00 | | |
| K. | OTHER CHARGES | | | |

TOTAL DEBT: $26,614.29

LESS AMOUNT HELD IN SUSPENSE: $0

| | | |
|---|---|---|
| TOTAL DUE AS OF DATE MOTION IS FILED: | $26,614.29 | * |

* This total cannot be relied upon as a payoff quotation.

This Worksheet was prepared by:

/s/ Jon J. Lieberman
Jon Lieberman (0058394)
Attorney for Movant
Sottile & Barile, Attorneys at Law
P.O. Box 476
Loveland, OH 45140
Phone: (513) 444-4100
Email: bankruptcy@sottileandbarile.com